**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL MARGOLIES, JR., | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 16-CV-1872 (JCH) |
| v. | : | |
| | : | |
| DARREN MILLINGTON, ET AL, | : | MARCH 11, 2019 |
| Defendants. | : | |

## BENCH TRIAL RULING

## I. INTRODUCTION

This is an action brought by plaintiff Michael Margolies, Jr. ("Margolies") pursuant to sections 1983 and 1988 of title 42 of the United States Code against defendants Darren Millington ("Officer Millington"), an officer in the Trumbull Police Department; Courtney Millington ("Mrs. Millington"), Darren Millington's wife and Margolies' ex-wife; and William Agresta ("Agresta"), Mrs. Millington's father. The allegations stem from an altercation between the parties in October 2015.

Margolies claims that Officer Millington and Mrs. Millington subjected him to unreasonable force in violation of the Fourth Amendment. He claims that all the defendants are liable for state law assault and battery, intentional and negligent infliction of emotional distress, and defamation. Margolies' Amended Complaint also raised claims of malicious prosecution under federal and state law, but those claims were abandoned at trial, and the court does not address them in this Ruling.

The case was tried to the court on December 17, 2018.

## II.    FINDINGS OF FACT[1]

Officer Millington is a Trumbull Police Officer.  He is married to Mrs. Millington. Agresta is Mrs. Millington's father.  Margolies and Mrs. Millington, previously married, were divorced in 2014.  They are the parents of three minor children, G., W., and J., who were aged 10, eight, and six, respectively, at the time of the events at issue.  At that time, Officer Millington and Mrs. Millington were engaged.

On the afternoon of Friday, October 30, 2015, Mrs. Millington and Margolies were present in Connecticut state court in connection with a temporary suspension of Margolies' custodial rights.  The Judge in that matter ordered that Margolies' parenting time resume immediately (that evening) and denied Mrs. Millington's request for a delay.  Margolies and Mrs. Millington communicated following the state court hearing, at which time Mrs. Millington indicated that the children did not wish to spend the weekend with Margolies.  Margolies insisted he wished to see the children and take advantage of his parenting time.  Mrs. Millington and Margolies then agreed that Margolies would pick up the children at 9:00 p.m., at the conclusion of the Daniels Farm Elementary School Halloween party.

Margolies arrived at the school between 8:30 and 9:00 p.m.  Mrs. Millington, Officer Millington, who was off-duty, and Agresta, were already present with the children.  The children were acting skittish and did not approach Margolies.  As the event ended, the parties and the children made their way towards the exit.  Mrs.

_____

[1] The court's findings of facts are based on a review of all the evidence, including exhibits and the witnesses' testimony at trial.  Where the court's findings necessarily require the resolution of competing testimony, such findings are based on both the documentary evidence and testimony, including the court's determination of witness credibility.

Millington informed Margolies that the children maintained that they did not wish to leave with him. Margolies, who still wished to take advantage of his court-ordered parenting time, said that the children did not get to choose whether to leave with him, and asked Mrs. Millington if she would discuss the dispute outside. Mrs. Millington said no. Margolies told Mrs. Millington she was perpetuating and exacerbating a bad situation. Officer Millington told Margolies he was the one perpetuating and exacerbating the situation. Mrs. Millington told Margolies that the children were not leaving with him that evening, and that he could file a contempt motion in state court if he so wished.

At that point, Margolies picked up his youngest child, J., turned, and stepped toward the school exit. J. began to cry and called out for Mrs. Millington. Margolies took one to two steps towards the door before he felt someone hit him from behind. Mrs. Millington had reached out over Margolies' shoulder, apparently to grab J. from Margolies, who had turned to walk out of the school. Margolies, unable to see who was reaching over his shoulder, turned to shield his son, which resulted in Mrs. Millington falling over Margolies' hip and onto the floor.[2] Margolies was unsure who was striking him, or for what purpose. When he saw that Mrs. Millington was on the floor beside him, Margolies felt disbelief that she had struck him.

Still carrying J. in front of him, Margolies then felt someone else jump on his back. Surveillance video shows that Officer Millington, who had jumped onto Margolies'

---

[2] Mrs. Millington testified that J. was crying when Margolies picked him up and, concerned for her child's wellbeing, she reached out for her son, at which point she was "bowled over" by Margolies and fell to the ground, injuring her arm. The court does not credit Mrs. Millington's testimony that Margolies "bowled" her over, or otherwise lifted, threw, or slammed her to the ground, as Agresta and Officer Millington claimed.

back, reached his arms around Margolies' shoulder and then one arm around his neck, initiating what eventually became a chokehold.  See Plaintiff's Exhibit 1 ("Pl.'s Ex. 1"). While maintaining his hold, Officer Millington told Margolies, "Stop, you know who I am, I am a police officer, don't fight back."[3]

Officer Millington pulled Margolies to a corner, holding him there in a chokehold until others intervened.  Agresta approached Margolies and removed J. from Margolies' hands.  Mrs. Millington placed herself between Officer Millington and Margolies, facing Officer Millington.  She can be seen in the surveillance video pushing against Officer Millington and speaking to him.  She wanted to diffuse the situation and told Officer Millington that engaging further "was not worth it."

Agresta, after placing J. on the floor, walked back towards Margolies, navigating around several people in order to reach him, and began to speak with him.  In the surveillance video, Agresta can be seen, his forearm raised above his waist and parallel to the floor, leaning into Margolies with it.  The gist of the conversation between Agresta and Margolies was Margolies denying that he struck Mrs. Millington or knocked her over, and Agresta claiming that Margolies had done so.  Agresta also told Margolies that he was going to get him.

Margolies then left the building and proceeded to his girlfriend's home.  He did not return to the school that evening and did not seek medical attention.  All three children remained at the school.  Police were called to the school, and Officer Millington,

---

[3] The video provided did not include sound.  The parties disputed whether Officer Millington made these statements.  Margolies testified that Officer Millington made the statements.  Officer Millington told the court he did not recall saying anything prior to initiating the hold on Margolies and denied telling Margolies to stop resisting because he was a police officer.  The court credits Margolies' testimony.

4

Mrs. Millington, and Agresta gave statements to the police. In his sworn statement to police, Officer Millington wrote that Margolies "grabbed [Mrs. Millington] and threw her into the air[,] slamming her down on the floor." Defendants' Exhibit 5, Statement of Darren Millington ("Defs.' Ex. 5"), 1–2. Officer Millington added that, when leaving the school, Margolies had "pushed his way past" several people, id. at 2, which the court does not credit. Mrs. Millington told a police officer that Margolies "hooked his arm around her," and that she was "lifted into the air." See Defendants' Exhibit 4, Affidavit of Officer Pysz at 2. Agresta told the same officer that Margolies picked Mrs. Millington up and "threw her to the ground in the doorway." Id.

The following week, on November 4, 2015, Margolies was stopped by five Trumbull police vehicles while driving to pick up his children for his next-scheduled parenting time. Five blocks from Mrs. Margolies' house, two police vehicles engaged their flashing lights from behind him, two from the front, and a fifth approached from the side. Margolies was arrested, without incident, and charged with breach of the peace, child endangerment, and assault in the third degree. The charges were ultimately dismissed, in exchange for Margolies' agreement to participate in an accelerated diversionary program. Margolies testified that he paid $2,000 to secure bail, and paid attorneys' fees in excess of $5,000 over the course of nine months.

Since the Halloween incident, Margolies has changed the location for pick-up and drop-off of his children, experiences anxiety and stress when entering Trumbull because Officer Millington is a Trumbull police officer, and has had to deal with what he described as a "rupture" to his relationship with his children.

III.   **CONCLUSIONS OF LAW**

    A.   <u>Fourth Amendment Excessive Force</u>

Margolies brought an action under section 1983 of title 42 of the United States Code, in which he alleged that Officer Millington and Mrs. Millington subjected him to unreasonable force in violation of his constitutional rights.  Am. Compl. ¶ 19.  Section 1983 is a mechanism to seek damages for the deprivation of constitutional rights by state actors.  <u>See</u> 42 U.S.C. § 1983.  Liability under section 1983 will lie only when the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  <u>Cornejo v. Bell</u>, 592 F.3d 121, 127 (2d Cir. 2010).  "The 'under color' of law requirement has consistently been viewed in the same manner as the 'state action' requirement under the Fourteenth Amendment."  <u>Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 189 F.3d 268, 271 (2d Cir. 1999) (citation omitted).  A private party may be found liable under section 1983, if the conduct is fairly attributable to the state.  The Second Circuit has held that a private party acts under color of law when:

> (1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test'].

<u>McGugan v. Aldana-Bernier</u>, 752 F.3d 224, 229 (2d Cir. 2014) (citation omitted) (alterations in original).

To prove a Fourth Amendment excessive force claim, a plaintiff must prove, by a preponderance of the evidence, that the application of force was objectively unreasonable, in light of the totality of the circumstances.  <u>See</u> <u>Maxwell v. City of New</u>

York, 380 F.3d 106, 108 (2d Cir.), supplemented, 108 F. App'x 10 (2d Cir. 2004). The

Second Circuit has held that, in examining the totality of the circumstances, courts

should look to (1) the severity of the crime at issue; (2) whether the suspect posed an

immediate threat to the safety of others; and (3) whether he or she was actively

resisting arrest. See Miller v. Moynihan, 453 F. Supp. 2d 453, 457 (D. Conn. 2006)

(quoting Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000).

        1.     Officer Millington

An off-duty police officer may be found to act under color of law if the officer

"invokes the real or apparent power of the police department or perform[s] duties

prescribed generally for police officers." Claudio v. Sawyer, 675 F. Supp. 2d 403, 408

(S.D.N.Y. 2009) (citing Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994)) (internal

quotations omitted, alterations in original). However, an officer does not act under color

of law when the actions at issue are taken as part of "personal pursuits." While there is

no bright line dividing personal pursuits from acts taken under color of law, courts look

to the totality of the circumstances and in particular at the nature of the officer's act.

See id.

In Rivera v. La Porte, 896 F.2d 691 (2d Cir. 1990), for example, an off-duty

corrections officer (La Porte) assaulted a civilian (Rivera) following a private traffic

dispute. La Porte then arrested Rivera, after identifying himself as a police officer. The

Second Circuit upheld a jury verdict for Rivera on a section 1983 excessive force claim.

On the question of whether La Porte acted under color of state law, the Second Circuit

held that, "[t]hough the dispute that precipitated the arrest was private, the response,

including the arrest and the use of excessive force, was unquestionably action under color of law." <u>Rivera</u>, 896 F.2d 696.

Officer Millington testified that he jumped on Margolies' back and engaged a hold over Margolies' shoulder, "touching" Margolies' neck. This court finds that the hold was a chokehold placed around Margolies' neck. After placing Margolies in the hold, Officer Millington told him, "Stop, stop, you know who I am, you know I am a police officer, don't fight back." Based on Margolies' testimony, as supported by the video evidence, the court finds that Officer Millington placed his arm around Margolies' neck. Further, Officer Millington identified himself as a police officer and instructed Margolies to refrain from resisting. The court finds that Officer Millington, by identifying himself as a police officer for the State of Connecticut, and by instructing an individual to refrain from resisting physical force by virtue of his status as such an officer, was acting under color of law. <u>See generally</u> Conn. Gen. Stat. § 53a-23 (abrogating common law rule regarding right to resist an illegal arrest and stating that "[a] person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer . . . whether such arrest is legal or illegal").

The second inquiry is whether the force Officer Millington employed was objectively excessive, in light of the totality of the circumstances. While most Fourth Amendment excessive force claims arise out of arrests, and neither party argues that Officer Millington placed Margolies under arrest, the Supreme Court made clear in <u>Graham v. Connor</u> that "<u>all</u> claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of

a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395, (U.S. 1989) (emphasis in original).

A Fourth Amendment seizure occurs when there is "a governmental termination of freedom of movement through means intentionally applied." Zainc v. City of Waterbury, 603 F.Supp.2d 368, 383 (D. Conn. 2009) (citing Brower v. County of Inyo, 489 U.S. 593, 596–97 (1989)). Officer Millington testified that his purpose in applying the hold on Margolies was to "stop the situation." He stated to responding officers that his goal was to "secure [Margolies] until police arrived." Clearly, Officer Millington's purpose was to restrain Margolies and prevent his freedom of movement, pending further police action. The court finds that Officer Millington's restraint of Margolies' movement rose to the level of a seizure under the Fourth Amendment.

As to the question as to whether the force Officer Millington applied was objectively unreasonable, the court concludes that it was. While Margolies was carrying his six-year-old son, Officer Millington jumped on Margolies' back, applied a chokehold on him, and maintained that hold on him until separated from Margolies by bystanders, including Mrs. Millington.[4] In his police statement, Officer Millington told the responding police officers that he saw Margolies grab Mrs. Millington and throw her into the air, slamming her down on the floor. See Pl.'s Ex. 5 at 2. While the video presented at trial shows that there was some form of physical contact between Margolies and Mrs. Millington, and that Mrs. Millington thereafter fell to the ground, there is absolutely no evidence to support Officer Millington's statement to his fellow police officers that Margolies grabbed Mrs. Millington, nor that Margolies slammed or threw Mrs. Millington

---

[4] It is relevant to this analysis that Officer Millington is taller and heavier-set than Margolies.

to the ground.  See Pl.'s Ex. 1.  Officer Millington also testified that Margolies picked up

J. and "flopped" the child around "aggressively."  The video shows Margolies picking J.

up into the air, swinging him into a carry position.

Finally, while J. cried out for his mother, the court does not conclude that it

established an objectively reasonable basis for the extent of force applied by Officer

Millington.  That a six-year-old child is unhappy or does not wish to leave a location with

a parent, does not, without more, establish an objectively reasonable basis to believe a

crime is being committed or that the child's wellbeing is threatened.  A Connecticut

State Judge, earlier that day, had ordered that Margolies' parenting time be reinstated

that evening.  Officer Millington was aware that visitation rights had been reinstated, and

that Margolies had a legal right to leave the school with his children.

The court is cognizant of its responsibility to consider the fact that "police officers

are often forced to make split-second judgments . . . about the amount of force that is

necessary in a particular situation.  However, [o]fficers may not . . . gratuitously inflict

pain in a manner that is not a reasonable response to the circumstances." Jackson v.

Tellado, 295 F.Supp.3d 164, 173 (E.D.N.Y. 2018) (citing Amnesty Am. v. Town of W.

Hartford, 361 F.3d 113, 124 (2d Cir. 2004) (declining summary judgment where

reasonable jury could find that "officers gratuitously inflicted pain in a manner that was

not a reasonable response to the circumstances")).  A reasonable officer on the scene

at the time would not conclude that Margolies was committing a crime by leaving the

school with his son: Margolies had the legal right to do so, and Officer Millington knew

that.  Nor would a reasonable officer conclude that Margolies was a threat to the safety

of others: Margolies was in the process of exiting the building[5] when Officer Millington initiated physical contact with him.  Finally, the court notes that, by leaving his feet and jumping onto Margolies' back, Officer Millington put J., whom Margolies was carrying, at significant risk of injury.  Had the men fallen to the floor, for example, there was a significant risk that the fall could have injured the child, given the weight and size of the two men.  Failing to take into account the risk that his actions posed to J. (let alone Margolies) added to the recklessness of Officer Millington's conduct.  The court concludes that, in jumping onto Margolies' back and applying a chokehold over Margolies' neck, Officer Millington's use of force was objectively unreasonable, under the totality of the circumstances, in violation of the Fourth Amendment.

2.     Mrs. Millington

Margolies alleged in the Amended Complaint and argued at trial that Mrs. Millington "had a relationship of such power, influence and authority with and over the defendant Darren Millington that she . . . was acting under color of law."  Am. Compl. ¶ 5.  However, there was insufficient evidence presented at trial for the court to conclude, by a preponderance of the evidence, that Mrs. Millington was operating "under color of law."  There was no argument made at trial that the State compelled Mrs. Millington's conduct.  Nor was her conduct the type that has traditionally been the exclusive prerogative of the state: Mrs. Millington, Margolies alleged, struck him from behind as he tried to exit the school building.  In effect, he alleged an assault or battery, but provided no evidence at trial to support a finding that the physical contact took place

_____

[5] The video shows Margolies approximately 8-10 feet from the exit doors.

as part of, or in connection with, any activity the state would normally conduct (e.g., an arrest).

The court concluded that Officer Millington was acting under color of law when he placed Margolies in a chokehold and ordered him not to resist, on account of his position as a Trumbull police officer.  However, while there was some evidence to support a finding of a conspiracy, the court is not persuaded that Margolies has proven, by a preponderance of the evidence, that Mrs. Millington and Officer Millington conspired to violate Margolies' constitutional rights.  Absent sufficient evidence to establish, by a preponderance of the evidence, that Mrs. Millington's actions could be fairly attributed to the state, the court concludes that she was not acting under color of law, and that Margolies' section 1983 claim against Mrs. Millington fails.

B.     Assault and Battery

Margolies claims that Officer Millington, Mrs. Millington, and Agresta are all liable for state law assault and battery.  In Connecticut, a civil assault is:

> an act that causes another person to be placed in imminent apprehension of a harmful or offensive contact with that person.  The plaintiff must have believed that the act would result in imminent contact unless prevented by self-defensive action or flight or the intervention of some outside force. . . . The act must be done by the defendant intentionally, wantonly, or without the exercise of due care.

Connecticut Judicial Branch Civil Jury Instructions § 3.13-1, Assault.  "A harmful contact is one that causes physical impairment of the condition of another's body, physical pain, or illness.  An offensive contact is one that offends a reasonable sense of personal dignity."  Id.  A battery is a harmful or offensive contact with the person of another.  "The contact must be the direct and immediate consequence of a force exerted by the

defendant intentionally, wantonly, or without the exercise of due care." Id. at § 3.13-2, Battery.

### 1. Claims against Officer Millington

Under Connecticut law, a police officer is justified in using physical force upon another person:

> when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

Conn. Gen. Stat. § 53a-22(b). Where the officer's actions are justified, he is not liable in tort for assault or battery.

While the inquiry into qualified immunity for claims arising under section 1983 focuses on what a reasonable officer in the defendant's position would believe, the concept of justification under Connecticut law focuses on what the officer himself believed. See Conn. Gen. Stat. Ann. § 53a-22(a) ("For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense."); see also Outlaw v. City of Hartford, 884 F.3d 351, 369 (2d Cir. 2018) ("[W]hat [the officer] himself 'believed' is not a consideration in determining qualified immunity for a federal constitutional violation but rather is an element only in the state-law concept of justification.").

Officer Millington testified that he saw Margolies grab J. and aggressively flop the child around. He testified that he heard J. screaming for his mother, and saw Margolies

strike Mrs. Millington, with Mrs. Millington ending up on the ground. He testified that, in applying the chokehold on Margolies, he was seeking to quell a chaotic situation, and to stop the violence, as he saw it, from continuing.

The court concludes that Officer Millington's belief that Margolies had struck Mrs. Millington, and that he posed a threat to the safety of a child, was not reasonable under the circumstances. Margolies did not initiate contact with Mrs. Millington; in fact, Mrs. Millington was reaching around Margolies when the two made contact, with Mrs. Millington falling to the floor. Officer Millington was aware that Margolies had the legal right to parenting time with his children that evening. Officer Millington could not, therefore, have reasonably believed that Margolies leaving with the child, as allowed by the Connecticut State Court, was itself a crime.

Finally, even if Officer Millington's belief was reasonable, his use of force would only be justified to the extent that the level of force he employed was necessary. Officer Millington, who is larger than Margolies, left his feet, jumped on Margolies' back, and held him, placing his arm around Margolies' neck. He then pulled Margolies to a corner—even after Agresta had taken J. from Margolies—and held him there until forcefully separated from Margolies by a crowd of individuals, including Mrs. Millington. The level of force employed was disproportionate to the circumstances, and Officer Millington was therefore unjustified in his use of force. See Conn. Gen. Stat. § 53a-22(a)–(b).

Having concluded that Officer Millington was unjustified in his use of force, the court further concludes that his actions constituted assault and battery under Connecticut law. Officer Millington acted intentionally, approaching Margolies from

14

behind, jumping on his back, and placing him in a chokehold.  He then pulled Margolies

to the corner of a room, holding him in place.  These actions, the court concludes, both

placed Margolies in imminent apprehension of a harmful or offensive contact and

constituted such harmful or offensive contact.  Further, the court concludes that Officer

Millington's actions indicated a reckless disregard for Margolies' rights, and that the

situation involved a high degree of danger to both Margolies and J.[6]  While Margolies

did not seek medical attention following the incident in question, actual or substantial

harm need not result from the contact for a defendant to be liable.  See Schmeltz v.

Tracy, 119 Conn. 492, 495–96 (1935).  Officer Millington is therefore liable for assault

and battery on Margolies.

2.      Claims against Mrs. Millington

Margolies claims that Mrs. Millington is liable for assault and battery under

Connecticut law.  Margolies picked up J. and took two to three steps towards the school

exit, when he felt someone hit him over his shoulder.  Margolies' claims of assault and

battery as to Mrs. Millington were related to this physical contact.

Mrs. Millington was reaching for her son when she made contact with Margolies,

who had turned to walk out of the school.  That is sufficient to establish that the act

complained of—the contact between Mrs. Millington and Margolies—was the direct and

immediate consequence of a force intentionally exerted by Mrs. Millington.  Margolies,

---

[6] The court notes that the doctrine of statutory immunity, as codified in Conn. Gen. Stat. § 4-165, does not protect Officer Millington from liability in this case, because statutory immunity under Connecticut law does not extend to "wanton, reckless or malicious" conduct.  See Martin v. Brady, 261 Conn. 372, 377 (2002).  In Connecticut, wanton, reckless, and malicious conduct has been defined as "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . [, and] highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  Shay v. Rossi, 253 Conn. 134, 181 (2000), overruled on other grounds by Miller v. Egan, 265 Conn. 301, 828 A.2d 549 (2003).

unable to see who was reaching over his shoulder, turned to shield his son from harm. The court concludes that, because of Mrs. Millington's contact with him, Margolies was placed in imminent apprehension of a harmful or offensive contact. The court concludes that Mrs. Millington is liable for assault.

The court also concludes that there was sufficient evidence adduced at trial to find that, in striking Margolies, Mrs. Millington committed a battery. As noted above, see supra at 15, while Margolies did not seek medical attention following the incident in question, actual or substantial harm need not result from the contact for a defendant to be liable. See Schmeltz, 119 Conn. at 495–96. Moreover, a defendant need not intend the specific harm complained of to be liable for battery, if the resultant harm was the natural consequence of the defendant's action. See Markey v. Santangelo, 195 Conn. 76, 78 (1985). Here, Mrs. Millington making contact with Margolies was the natural consequence of Mrs. Millington reaching out towards him, whether or not she intended the particular harm that followed. The court therefore concludes that Mrs. Millington is liable for battery.

3.      Claims against Agresta

After Officer Millington was separated from Margolies, Agresta walked up to Margolies and placed his arm up against him. Agresta prevented him from moving, repeatedly told Margolies that he had seen him strike Mrs. Millington, and told Margolies that he was "going to get" him. The video evidence showed that Agresta, after taking J. out of Margolies' hands and placing the child on the floor, walked back to the corner of the room where Officer Millington had dragged Margolies. To reach the corner and place himself in front of Margolies, Agresta had to purposefully maneuver around other

people. Agresta then raised his arm above his waist, parallel to the floor, and leaned into Margolies. At this point, Margolies was "pinned" in the corner.

The court concludes that Agresta's actions are assault and battery. As to assault, Agresta approached Margolies, made physical contact with him, and told Margolies that he was going to "get" him, all the while holding his arm up against him. This thinly veiled threat, coupled with the proximity of the two men, and the prolonged physical contact of Agresta's arm leaning into Margolies, was sufficient to create an imminent apprehension of a harmful or offensive contact. The court notes that Agresta was significantly older and smaller than Margolies, but the law does not abrogate liability for assault because of age or size, nor does it require fear of serious bodily harm. See Connecticut Judicial Branch Civil Jury Instructions § 3.13-1, Assault (noting assault liability for creation of imminent apprehension of harmful or offensive contact and defining an offensive contact as "one that offends a reasonable sense of personal dignity"). Agresta's actions were unmistakably intentional and, at the least, were sufficient to create apprehension of an offensive contact. Agresta is therefore liable for assault.

With regard to the claim of battery, the court concludes that Agresta intentionally acted to make a harmful or offensive contact with Margolies, under the meaning of those terms in Connecticut law. As noted above, actual or substantial harm need not result from the contact for a defendant to be liable. The defendant need only intend the action leading to the contact, and the contact itself need only be harmful or offensive— that is, "one that causes physical impairment of the condition of another's body," or "one that offends a reasonable sense of personal dignity." Connecticut Judicial Branch Civil

Jury Instructions § 3.13-2, Battery (citing <u>Sansone v. Bechtel</u>, 180 Conn. 96, 99 (1980); 2 Restatement (Second), Torts §§ 13, 15, 19 (1965)).  The court concludes that, by pushing his arm into Margolies to keep Margolies in place, Agresta both committed an act that caused physical impairment and offended a reasonable sense of personal dignity.  The court therefore concludes Agresta is liable for battery.

   C. <u>Defamation</u>

  Margolies has alleged that Officer Millington, Mrs. Millington, and Agresta are liable for defamation.  The general term "defamation" encompasses the common law torts of both libel and slander.  <u>See</u> <u>Gleason v. Smolinski</u>, 319 Conn. 394, 430 n.30 (2015).  The difference between the two torts is that "slander is oral defamation," whereas "libel is written defamation."  <u>Id.</u> (internal quotations and citation omitted).  All claims of defamation require a plaintiff to establish that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  <u>Id.</u> at 430.

  In some cases, a plaintiff may be able to argue that he was <u>per se</u> defamed, thus obviating the need to establish the fourth element of reputational harm.  <u>Id.</u> at 430 n.31. Defamation <u>per se</u> generally applies to situations in which the defamatory statement includes allegation of a "chargeable offense which is punishable by imprisonment."  <u>Id.</u> In a case of <u>per se</u> defamation, reputational harm is presumed such that a plaintiff need neither plead nor prove the reputational damage that has been suffered as a result of the defamatory statement.  <u>Id.</u>  Whether a particular statement is <u>per se</u> defamatory is a question of law for the court.  <u>See</u> <u>Proto v. Bridgeport Herald Corp.</u>, 136 Conn. 557, 565

(1950); see also Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn. App. 846, 852 (2003).

In Connecticut, "statements that a complaining witness makes to the police are subject to qualified immunity rather than absolute immunity." Gallo v. Barile, 284 Conn. 459, 471–72 (2007). "A qualified privilege protects false statements that are not made maliciously." Id. at 463 n.6. As the Connecticut Supreme Court has noted:

> Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false . . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth . . . . Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives.

Id.

The statements made to police by Officer Millington, Mrs. Millington, and Agresta, are therefore subject to qualified immunity from a claim of defamation absent proof, by a preponderance of the evidence, that the statements were made maliciously. The question, then, is whether the statements were (1) false, and (2) made maliciously.

Officer Millington stated, in a sworn statement, that Margolies "grabbed [Mrs. Millington] and threw her into the air[,] slamming her down on the floor." He also stated that, when exiting the building, Margolies "pushed his way past everyone." Agresta told officers that Margolies picked Mrs. Millington up and "threw her to the ground in the doorway." These statements were, at the least, an allegation of assault and battery.

As such, both Officer Millington and Agresta accused Margolies of committing a chargeable offense[7] and, if false, their statements would support a claim of defamation per se.  The court concludes that there was no evidence that Margolies, at any time, threw or slammed Mrs. Millington down on the floor.  The statements Officer Millington and Agresta made to police were false and, based on the evidence presented, this court finds that they were made in reckless disregard of the fact that they were false.  Further, the court finds that the statements were made with an improper motive: to put Margolies in jeopardy of arrest.  Because Officer Millington and Agresta maliciously published false statements to third parties, accusing Margolies of a chargeable criminal offense, they are liable for defamation per se.[8]

Mrs. Millington told officers that Margolies hooked his arm around her, after which she was "lifted into the air," landing on her arm.  Unlike the statements made by Officer Millington and Agresta, the court does not conclude, by a preponderance of the evidence, that Mrs. Millington maliciously made false statements.  Mrs. Millington reached out, over Margolies' shoulder, for J., at which point Margolies turned to shield J. as Margolies was lifting J.  It appears that, to the extent Mrs. Millington was lifted and rolled over onto the floor, it was as a result of her conduct.  While both Officer Millington

---

[7] See, e.g., Conn. Gen. Stat. § 53a-61 ("A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person . . . . Assault in the third degree is a class A misdemeanor."); Conn. Gen. Stat. § 53a-36 (authorizing a term of imprisonment of up to one year for Class A misdemeanors).

[8] As noted above, see supra n.6, Officer Millington is not protected from liability under Connecticut law, because his actions were malicious.  See Conn. Gen. Stat. §4-165; see also Shay, 253 Conn. at 181–82 (holding that exception to statutory immunity for wanton, reckless, and malicious actions rendered state employees liable for, inter alia, defamation), overruled on other grounds by Miller v. Egan, 265 Conn. 301 (2003).

and Agresta stated that Margolies lifted Mrs. Millington into the air and "threw" her to the ground, Mrs. Millington's statement used the passive voice, stating that she was "lifted" into the air, and that she "came down" on her arm. That is not inaccurate. The court finds that Mrs. Millington did not speak falsely or accuse Margolies of a chargeable crime. Moreover, the court finds that Mrs. Millington's statement was not made with knowledge or with reckless disregard of its falsity. Because the court does not conclude that Mrs. Millington's statement to police was made falsely or maliciously, it is entitled to qualified immunity. Margolies' defamation claim against Mrs. Millington fails.

        D.       <u>Intentional Infliction of Emotional Distress</u>

To succeed on a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must satisfy four elements: the plaintiff must prove (1) that the defendant intended to inflict emotional distress, or "knew or should have known that emotional distress was the likely result of his conduct;" (2) that the conduct was "extreme and outrageous;" (3) causation; and (4) that the emotional distress suffered was severe. <u>Appleton v. Bd. of Educ. of Town of Stonington</u>, 254 Conn. 205, 210 (2000). The second requirement—to show extreme or outrageous conduct—is a particularly heavy burden. As the Supreme Court of Connecticut has stated: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> at 210–11.

The court concludes that Margolies has failed to meet his burden of proving, by a preponderance of the evidence, liability for IIED as to Mrs. Millington. First, Margolies did not meet his burden to prove that the Mrs. Millington's physical conduct was

extreme and outrageous.  Mrs. Millington struck Margolies during an attempt to reach

around Margolies for her son, who was crying out for her at the time.  Her actions, while

no doubt offensive and harmful to Margolies, did not "go beyond all possible bounds of

decency" and, while they were offensive and taken in order to prevent Margolies from

exercising his visitation rights, this court cannot say they are "utterly intolerable in a

civilized community."  Appleton, 254 Conn. at 210–11.  As to Mrs. Millington's

statements to police, as noted above, see supra at 20–21, the court finds that she is

entitled to qualified immunity for those statements.

As to Officer Millington and Agresta, the court concludes that, while Margolies

has met his burden of proving—based on Officer Millington's physical conduct,

Agresta's physical conduct, and Officer Millington and Agresta's false statements to

police—the first and second elements of IIED, he failed to provide sufficient evidence for

the court to find that he suffered from "severe" emotional distress.  Though the

Connecticut Supreme Court has not established a bright-line test as to what level of

emotional distress is "severe," Connecticut courts generally cite to the Restatement

(Second) of Torts in discussing claims of IIED.  See, e.g., Carrol v. Allstate Ins. Co., 262

Conn. 433, 443 (2003) (discussing extreme and outrageous conduct); Petyan v. Ellis,

200 Conn. 243, 253 (1986) (listing elements of IIED).  Moreover, Connecticut trial courts

have looked to the comments of the Restatement in establishing the requisite severity of

emotional distress required to state a claim of IIED.  See Mellaly v. Eastman Kodak Co.,

42 Conn. Supp. 17, 21 (Super. Ct. 1991) (denying motion to strike claim of IIED

because "allegations could reach the required level of distress which 'no reasonable

[person] could be expected to endure . . . .'" (quoting Restatement (Second), Torts § 46, comment (j)).

Margolies testified that the events in question were traumatic, and that, as a result, he (1) changed the location for pickup and drop-off of his children; (2) experiences anxiety and stress when entering Trumbull because Officer Millington is a Trumbull police officer; and (3) suffered a "rupture" in the relationship with his children. While these effects were no doubt unpleasant and disturbing, the court does not find that the distress inflicted was "so severe that no reasonable [person] could be expected to endure it."  Restatement (Second) of Torts § 46, comment (j).  Therefore, Margolies' claims of IIED against Officer Millington, Mrs. Millington, and Agresta fail.

      E.     Negligent Infliction of Emotional Distress

To succeed on a claim of negligent infliction of emotional distress ("NIED"), the plaintiff must prove four elements: (1) that the defendant's conduct created an unreasonable risk of causing emotional distress; (2) that the distress was foreseeable; (3) that the emotional distress was severe enough that it might result in illness or bodily harm; and (4) that the defendant's conduct was the cause of the plaintiff's distress. Carrol, 262 Conn. at 444.  The Supreme Court of Connecticut has noted that the foreseeability requirement for claims of NIED "differs from the standard foreseeability of the risk of harm requirement for negligence liability generally in that it focuses more precisely upon the nature of the harm to be anticipated as a prerequisite to recovery even [when] a breach of duty might otherwise be found . . . ."  Scanlon v. Connecticut Light & Power Co., 258 Conn. 436, 447 (2001).  The court, then, must look at whether the defendants knew or should have known that their conduct created an unreasonable

risk of emotional distress, and whether that distress was the type that might cause illness or bodily harm.  Moreover, the Connecticut Supreme Court has stressed that "there is no logical reason for making a distinction, for purposes of determining liability, between those cases [alleging NIED] where the emotional distress results in bodily injury and those cases where there is emotional distress only."  Carrol, 262 Conn. at 448.  "The only requirement is that the distress might result in illness or bodily harm."  Id. (emphasis in original).

As to the claim against Mrs. Millington, the court concludes that it was foreseeable that her actions would cause emotional distress of the type that might cause illness or bodily harm.  Margolies testified that the incident as a whole was "traumatic" and upsetting, and that as a result his relationship with his children suffered a "rupture."  All the parties agreed at trial that difficulties regarding intra-familial relationships, whether between the parties, or between Margolies and the children, predated the events in question.  Given the family history, it was reasonably foreseeable that seeing their mother publicly arguing with and then assaulting their father would damage Margolies' relationship with his children.  Moreover, the stress and anxiety accompanying a serious "rupture" in a parent-child relationship might well result in illness or bodily harm.  As to causation, the assault by Mrs. Millington was a distressing event that foreseeably would—and did—lead to further strain on family relationships and cause distress.

Thus, the court finds that Mrs. Millington is liable for NIED.

As to Agresta, the court finds that he is liable for NIED.  Agresta knew or should have known that his false statements to police accusing Margolies of a crime—

specifically, that Margolies lifted Mrs. Millington into the air and slammed her into the ground—created an unreasonable risk of Margolies suffering emotional distress. It is foreseeable that, when one complains to a police officer that a person committed a crime, the police will—as they did in this case—arrest the accused. Such an arrest foreseeably could lead to anxiety and fear of police encounters, as Margolies credibly testified, especially where the arrest was based on a false accusation. Finally, though Margolies did not allege illness or bodily harm resulting from his anxiety and fear, such emotional distress might easily cause illness or bodily harm. That is sufficient, under Connecticut law, to meet the requirements for NIED. See Carrol, 262 Conn. at 448. As to causation, the court finds that Agresta's statements to police were a basis upon which the police arrested Margolies. See id. The court finds Agresta liable for NIED.

With regard to Officer Millington, the court must determine, before addressing the merits of any claim of NIED, whether the doctrine of statutory immunity, as codified in Conn. Gen. Stat. § 4-165, affords Officer Millington immunity. That section establishes that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. Ann. § 4-165. Negligence is, by definition, neither wanton nor reckless. See Martin v. Brady, 261 Conn. 372, 379 (2002) ("[T]o establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence." (second

alteration in original).  Therefore, Officer Millington is immune from liability unless his actions were outside the scope of his employment.

In examining the meaning of "scope of employment," the Connecticut Supreme Court has looked to "the nature of the alleged conduct and its relationship to the duties incidental to the employment."  Martin v. Brady, 261 Conn. 372, 377 (2002); see also Antinerella v. Rioux, 229 Conn. 479, 498 (1994), overruled on other grounds by Miller v. Egan, 265 Conn. 301.  The Connecticut Supreme Court has held, for example, that a state employee acted outside the scope of his employment where "the defendant's misuse of his authority was personal to him and was not 'primarily employer rooted' or reasonably incidental to the performance of employment duties."  Antinerella, 229 Conn. 499, overruled on other grounds by Miller v. Egan, 265 Conn. 301 (2003).

Here, Officer Millington became involved, while off duty, in a dispute between his then-fiancée and her ex-husband.  He jumped on Margolies, placed him in a chokehold, and then invoked his authority as a police officer to prevent Margolies from resisting or responding in self-defense.  The court finds that this was a misuse of Officer Millington's authority as a police officer and further, that his actions, were taken primarily in his personal interest, and not that of his employer, the state.  Therefore, the court concludes that Officer Millington was not acting within the scope of his employment and is not entitled to statutory immunity.

As to the merits of the NIED claim, the court concludes that Officer Millington is liable for NIED.  Margolies testified that, as a result of the events in question, he feels anxiety whenever he enters Trumbull, expressly because Officer Millington is a police

officer there.[9]  As a result of the events in question, he fears that he will be pulled over or otherwise harassed under pretext of committing a crime, but in fact because of his altercation with Officer Millington, and his position as a Trumbull police officer.  The court finds that Officer Millington knew or should have known that, as a police officer, his decision to jump on Margolies and hold Margolies around his shoulder and then his neck, would foreseeably cause Margolies emotional distress.  Moreover, the specific distress of anxiety surrounding interactions with Trumbull police, following an altercation with a Trumbull police officer, is both foreseeable and the kind that might result in illness or bodily injury.  Finally, for the same reasons as noted above regarding Agresta, see supra at 24–25, Officer Millington's false statements to police provided a separate basis for a finding of liability for NIED.  Therefore, the court concludes that Officer Millington is liable for NIED.

## IV.    DAMAGES

Having found (1) Officer Millington liable for use of excessive force under section 1983, assault, battery, defamation, and NIED; (2) Agresta liable for assault, battery, defamation, and NIED; and (3) Mrs. Millington liable for assault, battery, and negligent infliction of emotional distress, the issue remains to determine damages.  While Margolies did not claim any permanent or temporary bodily injury, the excessive force applied by Officer Millington put both Margolies and his son, J., at risk of harm.  The court awards Margolies $15,000 against Officer Millington on the section 1983 excessive force claim.  The court finds that damages for the assault and battery claims

---

[9] This anxiety seems well-founded, in light of the circumstances of Margolies' arrest on November 4, 2015.  See supra at 5.

against Officer Millington are identical with those of the excessive force claim. Therefore, the court awards Margolies $15,000 on all three causes of action, for a total of $15,000.

Having found Agresta liable for assault and battery, the court again notes that, while Margolies did not suffer any permanent or temporary physical injury, Margolies is nonetheless entitled to damages for the assault and battery committed by Agresta. The court awards the same $10,000 on the claim of assault and the claim of battery against Agresta, for a total of $10,000.

Having found Mrs. Millington liable for assault and battery and noting again that, while Margolies did not suffer any permanent or temporary injury he is nonetheless entitled to damages for the assault and battery by Mrs. Millington, the court awards Margolies the same $5,000 for the claim of assault and the claim of battery against Mrs. Millington, for a total of $5,000.

The court also found Mrs. Millington liable for negligent infliction of emotional distress, for causing, through her conduct, a serious rupture in his relationship with his children, which distress might result in illness or bodily injury. The court awards $5,000 for the claim of negligent infliction of emotional distress against Mrs. Millington.

Lastly, having found Officer Millington and Agresta liable for defamation and NIED, the court must determine the damages suffered by Margolies. Margolies credibly testified to the emotional impact on him following his arrest based on the false statements of both Officer Millington and Agresta: his concern about travelling in Trumbull and the rupture suffered in his relationship with his children. While Margolies has not sought counseling or treatment, the court finds that he has suffered anxiety as a

result of Officer Millington and Agresta's conduct. The court finds that the damages that were caused by the defamation and the emotional distress claims are the same for each cause of action. The court finds that the damages Margolies suffered were greater as a result of Officer Millington's actions, because Officer Millington's false statements had a greater impact on Margolies because of Officer Millington's position in the Trumbull Police Department. The court determines to award $20,000 to Margolies against Officer Millington, $10,000 of which is joint and several with Agresta, for a total of $20,000 against Officer Millington and $10,000 against Agresta on their defamation and NIED counts.

Therefore, judgment should enter against Officer Millington in the amount of $35,000, $10,000 of which is jointly and severally owed by Agresta; against Agresta in the amount of $20,000, $10,000 of which is jointly and severally owed by Officer Millington; and against Mrs. Millington in the amount of $10,000. Any application for fees under section 1983 must be filed within 30 days. See D. Conn. L. Civ. R. 11.

## V. CONCLUSION

For the foregoing reasons, the court concludes that Officer Millington, Mrs. Millington, and Agresta are liable for assault and battery against Margolies. The court finds that Agresta and Officer Millington are liable for defamation. The court finds that Officer Millington is liable for violating Margolies' Fourth Amendment rights, pursuant to section 1983 of title 42 of the United States Code. Finally, the court concludes that Officer Millington, Mrs. Millington, and Agresta are liable for negligent infliction of emotional distress.

**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of March 2019.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge